AMERICAN LEGION OF HONOR v. JOHN G. GEISBERG ET AL.

Delivered October 21, 1897.

1. **Mutual Benefit Insurance—Suspension of Member—Tender of Dues— Action for Damages.**

A suspended member of a fraternal order can not maintain an action for damages because of the refusal by the local collector of a tender of the dues for which he was in default, under the erroneous impression that the time for reinstatement had expired, where the collector upon learning of his mistake a few hours afterwards, and before the expiration of the time for reinstatement, offered to accept the money, promising that a reinstatement would follow immediately, which offer the suspended member refused to accept.

2. **Same—Same—Same—Sufficiency.**

That the amount tendered by a suspended member of a fraternal order to the local collector to procure his reinstatement under the laws of the order was in fact insufficient, does not deprive him of the right to be reinstated if the tender was otherwise sufficient, where both supposed that the amount was sufficient, and the tender was refused under the mistaken belief of the collector that the time for reinstatement had expired.

ERROR from Montgomery. Tried below before Hon. L. B. HIGHTOWER.

*Ewing & Ring*, for plaintiff in error.—1. Since reinstatement was dependent solely upon the fact of payment within the specified time, if Geisberg did not make full tender of such payment he lost the right of membership by his own default, and if he did make such tender, the beneficial right in question necessarily remained in full virtue, the tender being in law the equivalent of payment. In either event, the case must fail.

2. If Geisberg had a cause of action for breach of contract on the cause alleged, it was his duty to conduct himself as a reasonably prudent person would, in order to reduce his damages as far as practicable; and as by this means he would have reduced them to nothing, by complying with the association's offer of correction of the collector's mistake, he can not in any view claim more than nominal damages.

*Perryman & Bullitt*, for defendants in error.

PLEASANTS, ASSOCIATE JUSTICE.—This is an appeal from a judgment rendered for the defendants in error against the plaintiff in error in

a suit brought for the recovery of damages by the former for the alleged refusal of the latter to reinstate the plaintiff John G. Geisberg to membership in the order. The case is this:

The plaintiff John G. Geisberg held a benefit certificate issued by the plaintiff in error, in which it was provided that the said plaintiff in error, the American Legion of Honor, would pay to Mary Geisberg, wife of John G. Geisberg, the sum of $5000, should he die while a member of the order in good standing. On the 1st of January, 1895, the said John G. Geisberg was suspended for nonpayment of dues and assessments accruing and payable during the month of December, 1894. The laws of the order provide that a member of the council suspended for nonpayment of moneys owing to the order shall be reinstated upon his paying to the collector of the local council, in which he is suspended, the full amount of arrears for dues and fines, and all assessments called on or before the date of reinstatement, within sixty days from date of suspension.

On the 1st day of March, about the hour of 7 o'clock p. m., Geisberg, desiring to have himself reinstated in the order, called on J. Burghum, the local collector, at his office in the city of Houston, and tendered him $20, in full payment of all moneys due from Geisberg to the order; and the money was refused by Burghum, on the ground, as he then stated to Geisberg, that the tender was too late, as the time within which he was allowed to reinstate himself had expired. This conversation was had just as the collector was leaving the office for his supper.

Geisberg did not undertake to show to Burghum that he was mistaken, by calling to his attention the fact that February of that year had only twenty-eight days. His excuse for not doing so is that Burghum declined to hold any further conversation with him, further than to remark "that he was sorry, but he was too late, and that he owed the order nothing;" and immediately retired from his presence to the back part of the drug store in which Burghum kept his office. Burghum denies that he refused to speak further upon the subject, but says he believed at the time that the sixty days in which Geisberg was allowed to make the payment for the purpose of securing reinstatement in the order had expired. Both parties lived in the city of Houston, the office of the collector being but a short distance from Geisberg's residence.

On the next day, March 2d, Burghum, from conversation with members of the local council, was convinced that he had made a mistake, and had wrongfully refused to receive the money from Geisberg, and immediately set about to correct his error, and to allow Geisberg an opportunity to reinstate himself; and for this purpose, he advised the latter by letter that he would receive the money from him if tendered any time before midnight of that day. This letter was received by Geisberg about 7 o'clock p. m. of the same day, but he failed to make the tender or to acknowledge the receipt of the letter. He was, at the time he received the letter, with a sick child whom he could not leave, and he had no one he could send to Burghum. He made no effort on the next day to pay the money to Burghum.

Burghum would have received the money on the evening of the 1st of March, had he not been laboring under a mistake as to the number of days for which Geisberg had been suspended. This, we think, is established beyond cavil by the evidence disclosed by the record. Geisberg had been a member of the order for several years, and was an ex-collector of the council. He was familiar with the rules and customs of the order. He made no complaint to the local commander, or to any officer or member of the local council, of Burghum's action, but on the 4th of March, three days after Burghum refused to accept the payment tendered him, Geisberg addressed a letter to the supreme commander of the order, in which letter he said he was familiar with the constitution and laws of the order, and knew when he made the tender to Burghum that he was entitled to reinstatement; and he informed the supreme commander that, unless he was paid the full amount of his policy, he would consider himself defrauded, and in default of payment to him of that sum by the order, he would institute judicial proceedings and prosecute his claim to the furthest limits of the law.

His demand not being complied with, Geisberg again called upon Burghum about the 1st of May, and requested the latter to inform him what was due from him, and he would pay the amount, as he wished to be reinstated in the order; and he was informed by Burghum that after such a lapse of time he did not feel authorized to receive the money, and he was advised to refer the matter to the grand secretary of the order.

Upon the trial there was an issue made as to whether the amount tendered by the plaintiff to the local collector was sufficient to entitle him to reinstatement. The court instructed the jury on the issue, and the verdict sustained the affirmative of the issue as propounded by the plaintiff. The evidence makes it manifest that, at the time, the amount tendered was believed by both Geisberg and Burghum to be sufficient to cover all sums due the order; and while Burghum testified that he discovered he was mistaken a short time after he wrote to Geisberg telling him the amount due was less than $20, the sum tendered by Geisberg, Geisberg testified that the amount due from him at the time the tender was made was $19.90, the sum stated by Burghum in his letter to be due.

In addition to the facts above stated, it was shown by Geisberg's testimony that he joined the order in 1881, and that he paid all his dues and all assessments made against him from the time he became a member until he was suspended, and that these payments aggregated the sum of $711. He also testified that, by reason of his increased age, the cost of assurance on his life for the amount for which he was assured in the defendant company would be double in other similar companies what it would have cost him had he been reinstated to membership in the order.

There are many assignments of error upon the rejection of evidence offered by defendant, and upon the refusal of requested instructions, but we shall not discuss either the assignments or the counter-assignments, further than we may incidentally do in what we shall say in disposing of the appeal. We are of the opinion that, upon the facts we have recited,

and which constitute all the material facts proved upon the trial, the plaintiffs have no standing in court, and that the judgment rendered for them is erroneous.

Since the payment by the plaintiff John G. Geisberg on the 1st of March, 1895, would have worked his immediate restoration to full membership in the order, it is, we think, beyond question that his offer to do this within the time prescribed by the laws of the order prevented a forfeiture of any of his rights, and placed him in a position, if the officers of the defendant had refused to reinstate him upon his payment of all sums due from him, to compel them to do so through appropriate judicial proceedings instituted against the defendant. And this he could have done, in our judgment, whether the amount actually tendered was sufficient or not to cover all the moneys then due from him. Since the tender was not refused because insufficient in amount, and since both parties believed at the time that the sum tendered was sufficient, it should be presumed when Geisberg called upon the collector, and inquired what was due from him, that he was ready and prepared to pay the necessary sum. But while we thus hold, our conclusion is that in fact the sum tendered was insufficient to cover all dues and assessments for which Geisberg was liable at the time of the tender, and that the aggregate sum then due from Geisberg was that named and claimed by Burghum in his second letter of the 2d of March, addressed to Geisberg.

We are unable to concur with counsel for the defendant in error in their contention that, payment not having been actually made before the expiration of sixty days by Geisberg of all dues, fines, and assessments for which he was liable, there was no authority in Burghum or any other officer of the defendant company to receive the money and reinstate him in the order. If it be true that, by reason of the tender by Geisberg of payment of all moneys due from him to the company, and the wrongful refusal of the collector to receive the money, Geisberg could force the defendant to reinstate him by appeal to the judicial power of the State, it is not consonant with reason or law to say that the defendant, acting through its proper officers, could not legally voluntarily do that which it could be compelled to do by judicial process. The rule of the defendant, 138, which is relied on by counsel to sustain their contention, can not, we think, apply to one who has been suspended for nonpayment of dues and assessments, and who, within the time prescribed by the rules of the order, made tender of all arrears and assessments against him, and the tender was erroneously rejected by the local collector. To thus apply this rule would permit the defendant to inflict an injury upon one of its members through the error or wrong of its agent.

The supreme commander is clothed with large powers, and is expressly authorized by the laws of the order "to grant dispensations for any purpose that the good of the order may require, except for the admission of physically disqualified persons to membership." Had the plaintiff sought relief from this officer within any reasonable time after the refusal of Burghum to receive the money tendered him by Geisberg, there can be

no doubt that full redress would have been promptly afforded the plaintiffs. Geisberg is an ex-official of the order, and must be familiar with its rules and customs, and it seems to us that, if he has sustained injuries, he himself is the author of them. It is elementary that the law charges every man, when threatened with injury, with the exercise of ordinary prudence; and, in view of the law of the order above cited, the plaintiffs, we are inclined to think, would not have been entitled to the writ of mandamus to compel reinstatement in the order before first invoking relief from the supreme commander.

But, be this as it may, we are of the opinion that the act of the local collector in erroneously refusing the money tendered him, when that act was followed in a few hours by an effort on the part of the collector to correct his mistake, in an offer to take the money, with a promise from him that reinstatement should follow immediately upon receipt of the money, did not amount to a refusal on the part of defendant to reinstate Geisberg upon compliance by him with the rules of the order which provide for the restoration to membership of those suspended, and that therefore the plaintiffs can not maintain an action for damages against defendant.

The judgment is reversed, and inasmuch as the defendant has offered to reinstate Geisberg, upon compliance by him with the terms and conditions stated in its answer, the cause will be remanded to afford plaintiffs an opportunity to accept the offer, if they desire to do so.

*Reversed and remanded.*